## WISENER v. AMERICAN AIRMOTIVE CORPORATION.
### No. 123215.

Small Claims Court, Dade County.
July 27, 1964.

James C. Knight of Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for defendant.

SIDNEY L. SEGALL, Judge.

Judgment is rendered for the plaintiff for $180, plus court costs of $11. The evidence, which is legally sufficient to establish liability, discloses the following material facts —

Plaintiff, an employee on the staff of the U. S. Weather Bureau, Research Flight Facility, at the Miami International Airport, parked his automobile in the parking lot on the premises occupied by his employer under a lease from the Dade County Port Authority, lessor. Plaintiff's car was parked about 200 feet away from the fence which separated the adjoining property occupied by American Airmotive Corporation, defendant herein, under a lease from the same lessor. Plaintiff and other personnel of the Research Flight Facility had been parking their vehicles on this parking lot during daily working hours.

On or about March 25, 1964, plaintiff's parked vehicle, a 1964 Chevrolet, was damaged as a result of an overspray of paint stripping materials used by defendant on its paint stripping rack. This rack is located immediately adjacent to the fence on the southeast section of the "R.F.F." parking lot.

Prior to the abovementioned incident, on November 26, 1963, the chief of the "R.F.F." (plaintiff's employer) sent a bulletin entitled "Damage to R.F.F. Employees' Automobiles from Overspray from American Automotive Strip Rack". This bulletin referred to a conversation with Mr. H. D. McTeigue, general manager of defendant company, and advised that a procedure would be set up by defendant company to give notice — "in advance of any plans to use paint stripping chemicals in the area" (plaintiff's exhibit #1).

Subsequently, by letter dated March 26, 1964, defendant's aircraft division replied to a complaint as to the damage to plaintiff's car, and said letter (defendant's exhibit 4A) stated, inter alia, the following —

"In checking the schedules of March 25th, I find that we did not do any stripping on that day, however, we did wash the Weather Bureau DC-6 in that area and possibly washing compound and water could have blown into the area, even though the prevailing wind was not exactly in that direction. It is possible that stripper did blow into your area on other previous days, however, we have attempted to give verbal notification when dangerous conditions exist.

"We would like to further advise that with the present work load the stripping rack will be in almost 100% operation every day on either washing, stripping or desealing operations and we cannot assume any responsibility for damages developing from this operation, nor can we continue to give daily notification of this condition.

"This letter will serve as your official notification of the conditions in this area, and we would appreciate it if you would advise your personnel to govern themselves accordingly."

The question of liability is governed by the common law rule that the occupier of land generally owes a duty of reasonable care to prevent activities and conditions on his land from injuring persons or property outside his land, i.e., persons or personal property on public land or other private land. An occupier will generally be liable for injuries to persons (or property) outside his land which are caused by unreasonably dangerous conditions on his land. See 2 Harper & James, Law of Torts, §27.19.

The occupier's duty of care in the remedy of known dangerous conditions which may cause damage to persons or property outside his land emanates from the early common law maxim, *"Sic utere tuo ut alienum non laedas"*. Under this doctrine — "it is well settled that a property owner may put his own property to any reasonable and lawful use, so long as he does not thereby deprive the adjoining landowner of any right of enjoyment of his property which is recognized and protected by law . . . " See

Reaver v. Martin Theatres of Florida, 52 So.2d 682, 25 A.L.R. 2d 1451, 1453, and annotation of cases.

The evidence shows that the damage to the paint finish on plaintiff's vehicle is based on the reasonable cost ($180) of restoring the paint finish to the same condition as before the injury from the overspray or paint stripping from defendant's strip rack.

For the reasons stated, and on the basis of the foregoing principles of law, defendant is liable.